UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICHOLAS MARTINEZ | CIVIL ACTION |
| VERSUS | NO. 16-14896 |
| DANTE CUNNINGHAM, ET AL. | SECTION "R" (5) |

## ORDER AND REASONS

Defendants move to exclude the expert testimony of Valery Rousseau.[1] For the following reasons, the motion is granted in part and denied in part.

## I.   BACKGROUND

This case arises out of injuries sustained by plaintiff Nicholas Martinez when the door of a transport trailer fell on him. Plaintiff alleges that on April 18, 2016, he was helping defendant Dante Cunningham load Cunningham's car and motorcycle into a transport trailer.[2] The rear of this transport trailer featured a large cargo door hinged at the bottom.[3] While the door usually opened and closed by means of a cable and winch system, the system was broken at the time.[4]

---

[1]   R. Doc. 59.
[2]   R. Doc. 1 at 2-3 ¶¶ 5-6.
[3]   *Id.* at 3 ¶ 7.
[4]   *Id.* at 3 ¶ 8.

1

According to plaintiff, he and Cunningham tried to pull the door down manually.[5] Because Cunningham, who is 6' 8", is much taller than plaintiff, initially only Cunningham could reach the top of the door.[6] Plaintiff positioned himself beneath the door and waited for Cunningham to lower it to where plaintiff could reach it.[7] According to plaintiff, Cunningham then let go of the door because it was too heavy, causing the door to crush plaintiff's legs and injure his back.[8] Cunningham testified in a deposition that if plaintiff had held the door closer to the hinges from the beginning, then the door would not have fallen.[9]

Plaintiff sued Cunningham for damages on September 22, 2016. Plaintiff added USAA Casualty Insurance Company, which provided liability insurance to Cunningham, as a defendant on December 14, 2016.[10] Trial is set for February 26, 2018. Defendants now move to exclude the expert testimony and report of Valery Rousseau, a physicist at Loyola University New Orleans.[11]

---

[5] *Id.* at 3-4 ¶¶ 8-9.
[6] *Id.*
[7] *Id.* at 4 ¶ 9; R. Doc. 63 at 2-3.
[8] R. Doc. 1 at 4 ¶ 9.
[9] R. Doc. 63-1 at 2.
[10] R. Doc. 5.
[11] R. Doc. 59.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 gives the district court considerable discretion to admit or exclude expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997). Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. *Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function therefore involves a two-part inquiry. First, the Court must determine whether the expert testimony is reliable, *i.e.*, "grounded in the methods and procedures of science." *SEC v. Life Partners Holdings, Inc.*,

854 F.3d 765, 775 (5th Cir. 2017) (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)). The party offering the testimony has the burden of establishing reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 590. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* The Court's inquiry into the reliability of expert testimony is flexible and necessarily fact-specific. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. This is primarily an inquiry into the relevance of the expert testimony. *See id; see also Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) ("The expert testimony must be relevant . . . in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."). Expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience

and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

## III. DISCUSSION

Rousseau's report offers three opinions.[12] First, Rousseau states that the door exerted no force on Cunningham when it began its downward descent. Second, Rousseau opines that this force increased to a maximum of 115 pounds as the door descended, and that plaintiff could reach the top of the door only when it had moved 40.8° from its vertical position. Third, Rousseau opines that plaintiff's "presence closer to the door when the door first began its downward movement" would not have made "a difference in preventing the door from dropping."[13] According to plaintiff, these opinions would rebut Cunningham's testimony that plaintiff should have helped to hold up the door as soon as the door started moving downwards.[14]

Rousseau's opinions about the downward force exerted by the door are both reliable and helpful. These opinions are based on the physical characteristics of the door—its weight, length, and distance from the ground—and trigonometric equations. The Court is satisfied that Rousseau

---

[12] *See* R. Doc. 59-3 at 3.
[13] *Id.* at 1.
[14] R. Doc. 63 at 3.

5

arrived at these opinions using scientific methods and procedures.[15] *See Life Partners Holdings*, 854 F.3d at 775. Moreover, these opinions could assist the jury in determining whether Cunningham acted negligently either by trying to lower the door manually or by letting go, and whether plaintiff was contributorily negligent by not helping to hold up the door.

Rousseau's opinion about the angle at which plaintiff could have reached the top of the door, however, is not reliable. This opinion is based in part on Rousseau's assumption that plaintiff "has average body proportions"—specifically, his shoulder height is 82% of his body height, and his arm length is 38% of body height.[16] This assumption lacks "any specific factual support" in the record, and is therefore speculative. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). Plaintiff argues that Rousseau could rely on a specific photograph to make this assumption, but the photograph does not reveal, with any precision, the proportions of plaintiff's shoulders and arms.[17] Moreover, bodily proportions on average people can

---

[15] Defendants argue that Rousseau's opinions are unreliable because he did not look at a photograph of the transport trailer door. R. Doc. 59-2 at 5. But Rousseau states in an affidavit that he did look at such a photograph. R. Doc. 63-2 at 1. Rousseau further states that he based his calculations on dimensions provided by the manufacturer. *Id.*
[16] R. Doc. 59-3 at 1.
[17] *See* R. Doc. 63-3.

vary, and plaintiff fails to explain why Rousseau could not simply use plaintiff's actual proportions.

Rousseau's final opinion—that the door would have fallen even if plaintiff had helped to hold it up—is also unreliable. Rousseau's report states: "If Martinez placed his hands on the middle of the door when the door was still vertical, the effectiveness of Martinez's force as the door began its descent would only be 50% of Cunningham's and would have made little difference in preventing the door from dropping."[18] The report further states that it was "more advantageous and more effective" for plaintiff to "wait[] for the door to make some angle before putting his hands on it."[19] This opinion is not based on any discernible methodology. Nor does it consider how much weight plaintiff can bear. Without this critical piece of information, Rousseau can only speculate that the door still would have fallen had plaintiff helped to hold it up from the beginning.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to exclude Valery Rousseau's report and testimony to the extent he opines

---

[18] R. Doc. 59-3 at 3.
[19] *Id.*

about the angle at which plaintiff could have reached the top of the door, and about whether plaintiff's presence closer to the door when the door began its downward descent would have prevented the door from falling. The Court otherwise DENIES defendants' motion.

New Orleans, Louisiana, this __31st__ day of January, 2018.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE